# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

KEVIN J. KERRIGAN,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

NO. C09-411-RAJ

REPORT AND RECOMMENDATION

Plaintiff Kevin J. Kerrigan appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1958 and was 48 years old on the date of the ALJ's decision. (Administrative Record ("AR") at 16, 58.) He has more than a high school education. (AR 16, 83.) His past work experience includes employment as a computer technician and a shipping and

REPORT AND RECOMMENDATION - 1

receiving clerk. (AR 16, 78.) Plaintiff was last gainfully employed on December 14, 2001. (AR at 22.)

On May 20, 2003, plaintiff filed applications for DIB and SSI payments. (AR 57.) He asserts that he is disabled due to bipolar disorder, depression, anxiety, and attention deficit disorder ("ADD"). (AR 16, 77.) The Commissioner denied plaintiff's claim initially and on reconsideration. (AR at 45-48, 51-52.) Plaintiff requested a hearing which took place on January 24, 2007. (AR 53, 471.) The ALJ heard testimony from the plaintiff and vocational expert Michael Swanson. (AR 471-96.) On February 8, 2007, the ALJ issued a decision finding the plaintiff not disabled within the meaning of the Act at any time through the date of the decision. (AR at 16-23.) On January 30, 2009, the Appeals Council denied plaintiff's request for review, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On March 27, 2009, plaintiff timely filed the present action challenging the Commissioner's decision. (Dkt. No. 1.)

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset date. (AR 17, 22.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff has the following severe impairments: bipolar disorder, depressive type; anxiety; ADD; and central auditory processing disorder. (AR 17, 22.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff did not have an impairment or combination of impairments that meet or equal a listed impairment. (AR 17, 22.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity ("RFC") and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff could not perform any of his past relevant work. (AR 21, 22.) If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1099-1100 (9th Cir. 1999). The ALJ found there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as laundry worker, industrial cleaner, and warehouse worker. (AR 23.) Accordingly, the ALJ concluded that plaintiff is not disabled. (AR 23.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes*, 881 F.2d at 750. If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas*, 278 F.3d at 954.

Plaintiff argues that the ALJ erred in (1) evaluating the opinions of treating psychiatrist James A. Salmon, M.D., and (2) posing an incomplete hypothetical to the vocational expert. (Dkt. No. 12.) He requests remand for an award of benefits or, alternatively, for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. (Dkt. No. 16.) For the reasons described below, the Court agrees with the plaintiff.

A.   Medical Opinion

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; 20 C.F.R. § 404.1527(d)(1)-(2).  "Likewise, greater weight is accorded to the opinion of an examining physician than a non examining physician." *Andrews*, 53 F.3d at 1041.  However, under certain circumstances, a treating or examining physician's opinion can be rejected, whether or not that opinion is contradicted by other medical evidence of record. *Magallanes*, 881 F.2d at 751.  An ALJ must give clear and convincing reasons for rejecting a treating or examining physician's opinion if that opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id*. (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Id*.

   *1.   James Salmon, M.D.*

Plaintiff asserts that the ALJ erroneously evaluated the January 17, 2007, opinions of treating psychiatrist James Salmon, M.D., regarding plaintiff's functional limitations.  (Dkt. No. 12 at 4-9.)  Plaintiff contends that although the ALJ agreed with Dr. Salmon's opinions, he failed to fully incorporate all of those opinions into his RFC assessment.  *Id*.  The Commissioner argues

that the ALJ's RFC assessment properly accounted for the limitations Dr. Salmon assessed in his January 2007 medical opinion. (Dkt. No. 16 at 5-10.)

Dr. Salmon was plaintiff's treating psychiatrist beginning in June 2003. (AR 232-306, 321-36, 337-451.) On January 17, 2007, Dr. Salmon completed Agency Form HA-1152 entitled "Medical Source Statement of Ability to do Work-Related Activities (Mental)," which rated plaintiff's mental limitations on a scale from "none" to "extreme" in ten work-related activities.[1] (AR 321-36.) Dr. Salmon opined that plaintiff had "marked" limitations in one category, "moderate" limitations in seven categories, and "slight" limitations in two categories. (AR 322-23.) Specifically, Dr. Salmon opined that plaintiff had "marked" limitations in his ability to carry out detailed instructions; "moderate" limitations in his ability to understand and remember short, simple instructions; understand and remember detailed instructions; make judgments on simple work-related decisions; interact appropriately with the public; interact appropriately with supervisor(s); respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting; and "slight" limitations in his ability to carry out short, simple instructions; and interact appropriately with co-workers. (AR 322-23.)

---

[1] Form HA-1152 provides the following definitions:

- <u>None</u> – Absent or minimal limitations. If limitations are present they are transient and/or expectable reactions to psychological stress.
- <u>Slight</u> – There is some mild limitations in this area, but the individual can generally function well.
- <u>Moderate</u> – There is moderate limitation in this area but the individual is still able to function satisfactorily.
- <u>Marked</u> – There is serious limitation in this area. The ability to function is severely limited but no precluded.
- <u>Extreme</u> – There is major limitation in this area. There is no useful ability to function in this area.

(AR 322.)

The ALJ agreed with Dr. Salmon's January 2007 opinions, stating that "Dr. Salmon's January 2007 medical source statement appears to adequately capture the claimant's situation." (AR 20.) The ALJ further stated:

> Most significantly, the ALJ finds that Dr. Salmon's "moderate" ratings correlate well with the specific data that is garnished from the neuropsychological testing, which is the primary foundation for the ALJ's function-by-function mental assessment. . . . Dr. Salmon's assessment that the claimant has no greater than moderate limitations except in carrying out detailed instructions, comports with the testing results and a limitation to simple instructions. His ratings and concerns about claimant's concentration problems comport with the ALJ's assessing restrictions on auditory responses and exposure to work place distractions. Dr. Salmon's treatment notes and assessment are consistent with the ALJ's preclusion of sustained interaction with the public and peers.

(AR 21.) Based in part on Dr. Salmon's January 2007 opinions, the ALJ imposed the following RFC:

> The claimant has the residual functional capacity for work that involves understanding and following only simple instructions in one-to-one situations, does not demand more than intermittent auditory responses from the worker; is not incompatible with poor short-term memory (5th percentile); is not incompatible with poor organizational skills; does not required sustained interaction with the public or peers and does not expose the worker to significant distractions.

(AR 22.)

Plaintiff asserts that although the ALJ expressly endorsed and agreed with Dr. Salmon's moderate ratings, his RFC assessment did not include five of the seven moderate limitations identified in Dr. Salmon's opinion, including the ability to (1) understand and remember short, simple instructions; (2) make judgments on simple work-related decisions; (3) interact appropriately with supervisors; (4) respond appropriately to work pressures in a usual work setting; and (5) respond appropriately to changes in a routine work setting. (Dkt. No. 12 at 7.) Plaintiff contends that because the ALJ provided no reasons for rejecting Dr. Salmon's opinions regarding these limitations, substantial evidence does not support the ALJ's RFC assessment. *Id*.

REPORT AND RECOMMENDATION - 7

The Court agrees with the plaintiff that the ALJ gave no reason for rejecting Dr. Salmon's opinion that plaintiff is moderately limited in his ability to understand and remember short, simple instructions; make judgments on simple work-related decisions; interact appropriately with supervisors; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. While the ALJ included Dr. Salmon's findings of severe limitations in plaintiff's ability to carry out detailed instructions, and moderate limitations in his ability to understand and remember detailed instructions, and interact appropriately with the public, the remaining five moderate limitations are not included in the ALJ's determination of plaintiff's RFC. The ALJ erred by giving no reason for failing to include the limitations in the RFC. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(holding that "specific and legitimate reasons" are required to reject a treating doctor's opinion that is contradicted).

The Commissioner argues that the ALJ implicitly rejected some of Dr. Salmon's opinions "to the extent they inferred that Plaintiff had a more limited functional capacity." (Dkt. No. 16 at 6-9.) The Commissioner asserts that the record contains evidence that medication and therapy improved his condition over time, and that his daily activities showed that his mental capacity was greater than Dr. Salmon believed it to be. *Id*. While there may be conflicting evidence as the Commissioner suggests, the ALJ did not provide any reasons, let alone "specific and legitimate" reasons for rejecting Dr. Salmon's opinions regarding plaintiff's moderate limitations. It is the ALJ's responsibility, not the Commissioner's, to provide specific and legitimate reasons for rejecting Dr. Salmon's opinions.

Alternatively, the Commissioner contends that the RFC assessment already accounted for Dr. Salmon's assessed limitations because, by definition, "a 'moderate' limitation would still

allow an individual to perform work-related functions satisfactorily." (Dkt. No. 16 at 9 (citing AR 322.)) The Court disagrees. A "moderate" limitation is defined on the Agency form as having a "moderate limitation in this area but the individual is still able to function satisfactorily." (AR 322.) As the plaintiff points out, a "moderate" limitation is less than a "marked" and "extreme" limitation, and more than no limitation or only a "slight" limitation. *Id*. Thus, a "moderate" limitation could not rationally be no limitation or only a "slight" limitation. Because a "moderate" limitation is greater than no limitation or only a "slight" limitation, it was error for the ALJ to not address them in his assessment of plaintiff's RFC, or to provide specific and legitimate reasons for rejecting them. Because the ALJ did not make clear whether he rejected Dr. Salmon's opinions as the Commissioner argues, or merely neglected to account for these limitations in assessing plaintiff's mental RFC, remand for further consideration and clarification is required.[2]

---

[2] Relying on *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007), the Commissioner further contends that "a doctor's assessment of 'moderate' limitations does not translate to any specific limitations in a claimant's residual functional capacity." (Dkt. No. 16 at 9.) In *Hoopai*, the ALJ determined that the claimant had severe depression at step two of the sequential evaluation process, but did not find that the depression resulted in any significant limitations which would have to be included in his RFC finding and presented to a vocational expert. The Ninth Circuit held that "[t]he step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai*, 499 F.3d at 1076. The issues here, however, are distinct from those raised in *Hoopai*. Unlike the ALJ in *Hoopai*, the ALJ in the present case *agreed* with Dr. Salmon's opinion that plaintiff's mental impairments resulted in numerous moderate limitations, but without explanation, disregarded certain limitations assessed by Dr. Salmon when formulating plaintiff's RFC. Thus, the *Hoopai* case is inapposite.

B. <u>Step Five Analysis</u>

In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations. *Embrey*, 849 F.2d at 422-24. In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical posed must "consider all of the claimant's limitations." *Andrews*, 53 F.3d at 1044. The ALJ is not required to include limitations for which there is no evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Because the hypothetical question posed to the vocational expert was based upon the faulty determination of plaintiff's RFC, the vocational expert's answer cannot serve as substantial evidence that plaintiff can perform other jobs that exist in substantial numbers in the national economy. As a result, the questions posed to the vocational expert and his responses are legally deficient and of no evidentiary value. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). On remand, the ALJ should properly evaluate the evidence in accordance with appropriate legal standards and incorporate them into a hypothetical to the vocational experts.[3]

V. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings not inconsistent with this Report and Recommendation. In particular, the ALJ should reevaluate the medical evidence, give legally sufficient reasons for the weight accorded to Dr. Salmon's opinions, and hear testimony from a

---

[3]Plaintiff also argues that the ALJ should have defined the term "moderate" for the vocational expert. (Dkt. No. 12 at 8.) At the administrative hearing, plaintiff's attorney defined the term "moderate" as "20 percent of the time the person would not be able to keep up with or respond appropriately to work pressures in any usual work setting." (AR 495.) The ALJ properly rejected plaintiff's proposed definition because it was inconsistent with the definition provided in Dr. Salmon's opinion. (AR 22.) Plaintiff contends that "the ALJ should have defined 'moderate' himself if he did not agree Kerrigan's attorney's definition." (Dkt. No. 12 at 8.) Because this matter is being reversed, plaintiff may pursue this issue on remand.

vocational expert concerning the full vocational impact of all of plaintiff's impairments based on, among other things, a reassessment of plaintiff's RFC. This testimony shall include answering a hypothetical that takes into account all of plaintiff's limitations. With this information, the ALJ should then apply all appropriate steps of the sequential evaluation process to determine whether Plaintiff's severe impairments render him disabled for purposes of Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of November, 2009.

Mary Alice Theiler
United States Magistrate Judge